70 So.2d 629

## JONES et al.　v.　STATE.

### 4 Div. 747.

Supreme Court of Alabama.

Feb. 25, 1954.

The following charges were refused to defendants:

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., Owen Bridges, of counsel, for the State.

V. Cecil Curtis, W. R. Belcher, Bowen Brassell and Roy H. Phillips, Phenix City, for appellants.

MERRILL, Justice.

Albert Lee Jones and Arthur Lee Grimes were jointly indicted for the crime of murder in the first degree. The indictment charged that these two defendants "unlawfully, and with malice aforethought, killed Mrs. Mattie V. Pearce, by shooting her with a gun or pistol." They were placed on trial and found guilty as charged and sentenced to death in the electric chair. A motion for a new trial was denied and the appellants now prosecute an appeal to this court under the automatic appeal statute. Code of 1940, Title 15, § 382(1) et seq.

The appellants were living or staying together in November 1952 and they planned to burglarize the home of Mr. D. W. Pearce and Mrs. Mattie Pearce at Fort Mitchell in Russell County, which was adjacent to their store. They watched the home for a time on the 24th but the Pearces did not leave and they decided not to carry out the project that day. The next day, November 25, 1952, they left their place of abode about four o'clock p. m. and walked along the road toward the Pearce Home and Store. Defendant Grimes was armed with a .38 calibre revolver. On their way they helped an acquaintance, Florence Shirley, cut some wood and about dark they reached a point where they could watch the Pearce premises. One of the appellants went to the store and purchased two boxes of matches in order to ascertain who was in the store. They waited in concealment and saw Mr. and Mrs. Pearce leave the store and drive toward Phenix City. They then went to the Pearce dwelling and forced an entry. After searching the house they discovered no money, but defendant Jones appropriated a .38 calibre revolver and defendant Grimes

got a flashlight. They waited in a closet in a front bedroom until the Pearces returned. Mrs. Pearce came in the house first, Mr. Pearce staying in the car with the lights on until she had entered. Both Mr. and Mrs. Pearce came through the front part of the house and went back into the kitchen. Mrs. Pearce came back to the living room and made two telephone calls, one of them to her daughter. While she was making the telephone calls, the appellants moved out of the closet, and were standing in the room so that when Mrs. Pearce came into the room she saw them.

She screamed, turned, went out of the room and almost immediately reentered the room, whereupon the defendant Jones shot her. Mr. Pearce ran to the aid of Mrs. Pearce and was shot twice by defendant Grimes. The evidence of Dr. Sowell, a State Toxicologist, indicates that both Mr. and Mrs. Pearce died from the wounds received when they were shot.

The appellants searched Mr. Pearce and failing to find any money, they took his car keys and found a money sack containing about $70 and a flashlight in the glove compartment of the car. They went back into the house and pulled some "window curtains" around the bodies and set fire to them. The fire failed to burn properly and they secured some Diesel fluid from a "county shop" nearby and poured this on the flames. The fire spread to the house, which burned to its foundation before the bodies of Mr. and Mrs. Pearce were removed.

They went from there to the home of Fannie Mae Butler and while en route, discarded the two flashlights, a set of keys and washed the blood off their shoes. After drinking some whiskey at the Butler home, Amzi Griggs drove them to the home of Lucinda Lockhart, who lived near Uchee Creek. They arrived there about midnight and they stayed until eight o'clock the next morning. Defendant Grimes left one of the pistols in a drawer at this home. After leaving Lucinda's they divided the money and went to Columbus, Georgia, where they sold the pistol taken from the home of the Pearces.

The defendants did not offer any testimony and the case went to the jury when the state rested.

■■ The appellants' first contention is that the court erred in that "at the commencement of the trial of these defendants, their counsel moved a continuance on the grounds that there were only forty-seven jurors to strike from for the trial of this case." The record affirmatively shows as follows: "It is further ordered that the venire of jurors for the trial of this case shall be 100 in number, the same consisting of 90 drawn as regular jurors for the week of this court beginning Monday, April 27, 1953, together with an added number of 10 drawn in open court by the presiding judge in the presence of the defendant." The defendants were entitled to select a jury from a list containing the names of at least thirty competent jurors. Code of 1940, Title 30, § 65; Emmons v. State, 253 Ala. 216, 44 So.2d 788; Hardwick v. State, 26 Ala.App. 536, 164 So. 107; Lewis v. State, 22 Ala.App. 108, 113 So. 88. The court did not err in overruling the motion for a continuance.

■ Appellants next complain of the trial court's refusal to give written charges 1 and 5. Charge 1 could have been refused because it was not rested on belief from the evidence, Wesson v. State, 251 Ala. 33, 36 So.2d 361, or that it was abstract, Jackson v. State, 18 Ala.App. 627, 93 So. 258, or because it was not within the issues and was not supported by the evidence. 6A Ala.Digest 547, Criminal Law, ⊕814(1). According to the undisputed testimony of Dr. Sowell, a State Toxicologist, the deceased died as a result of a bullet wound and "the fire played no part in the death of this body." Charge 1 was properly refused.

■ Requested charge 5 could very properly have been given since it was not covered in the oral charge. The same question was presented in the case of Collins v. State, 21 Ala.App. 152, 106 So. 341, 343, with regard to charge 4, which was identical

in effect with charge 5 in the case at bar. There the Court of Appeals said:

"We can see no reason why the court refused charge 4 requested in writing by defendant. Prater v. State, 193 Ala. 40, 69 So. 539. However, we do not regard its refusal in this case as being hurtful to the substantial rights of defendant. In the first place, there was no contention or insistence that the indictment should be regarded as evidence against defendant, nor was there any suggestion or intimation in argument or otherwise that it should be so regarded or considered. For this reason the charge related to a matter which might be termed wholly abstract. * * * The evidence was ample to justify the verdict without resort by the jury to the indictment as evidence. While, as stated, the court should have given the charge, the refusal to do so does not constitute reversible error, and we will not predicate a reversal of this judgment thereon. Code 1923, § 3258; rule 45, 175 Ala. xxi."

In the instant case the trial court in his oral charge said:

"* * * You are the sole judges of the evidence in this case, and that evidence must come to you from this witness stand, and not from any other source or from what you have heard on the outside, or what anybody has related to you; but it is to come solely from the evidence as you have heard it from the witness stand."

The failure of the court to give charge 5 did not injuriously affect the substantial rights of the defendants.

■ Appellants' next contention is that "the trial court erred in refusing to charge the jury in writing at the request of the defendants." Said motion to charge the jury in writing was made at the time of the conclusion of the evidence in the case. This motion was evidently made under Code of 1907, § 5363. Since 1923 this matter has been controlled by § 9508, Code of 1923, and § 272, Title 7, Code of 1940.

■ Appellants contend the court erred in admitting evidence of the confessions of Jones not made in the presence of Grimes and vice versa. The record reveals that there were eight separate and distinct confessions, four by each defendant, made and admitted into the evidence by the trial court. Each defendant, it appears, made three confessions out of the presence of the other defendant, and all six of these confessions were admitted into the evidence over objection by counsel that only one defendant was present when each confession was made. There was, however, a confession by each defendant made in the presence of the other defendant, and each defendant agreed to the truth of the other's confession at the time it was made. These last two confessions were for all practical purposes exactly the same as the prior six. The trial court in its oral charge instructed the jury that a confession by one defendant did not bind the other, and should be considered as evidence only against the defendant making the confession.

In Thomas v. State, 215 Ala. 497, 111 So. 212, 213, this court said:

"The trial court committed no error in its rulings on the evidence. It is true that the confessions of the two defendants, separately made, were at first admitted as evidence against both. This was technically correct, because the only objection was a *joint* objection by both defendants, which was clearly bad as to the defendant whose confession was being offered; and, being bad as to one, it was properly overruled as to both. But the court afterwards restricted each confession to matter relating to the declaration and limited it as evidence to be considered only against the declarant, so that, even had the court been in error originally, the error was clearly and emphatically corrected. Such an instruction was all that either defendant could properly ask. Williams v. State, 81 Ala. 1, 1 So. 179, 60 Am.Rep. 133; Lawson v. State, 20 Ala. 65, 56 Am. Dec. 182."

The case of Clark v. State, 240 Ala. 65, 197 So. 23, is authority for the proposition that the admission of statements of an alleged conspirator not made in defendant's presence and hearing was not reversible error, where such statements were similar to coconspirator's statements made in defendant's presence and hearing and the trial court, after admitting both classes of statements, instructed the jury not to consider statements made by coconspirator when defendant was not present. See Consford v. State, 15 Ala.App. 627, 74 So. 740, and Barfield v. State, 19 Ala.App. 374, 97 So. 378.

■ Appellants next contend that at the time the confessions were admitted in evidence, the corpus delicti had not been proven. In Phillips v. State, 248 Ala. 510, 28 So.2d 542, 546, we said: "Proof of death as a result of force unlawfully applied is sufficient as a predicate for the introduction of a confession voluntarily made. Before a confession may be admitted it is not incumbent upon the State to introduce evidence tending to identify the accused as the guilty agent applying the unlawful force causing death." This question is fully treated in our cases of Peoples v. State, 256 Ala. 612, 56 So.2d 665, and Snead v. State, 251 Ala. 624, 38 So.2d 576, and need not be further amplified here.

■ Appellants' final contention is that the court erred in admitting in evidence a map or floor plan of the Pearce home. The relevancy of this matter cannot be determined by us, the map or floor plan not appearing in the record. Redwine v. State, 36 Ala.App. 560, 61 So.2d 715; 7 Ala. Digest 210, ☞1120 (9).

■ The evidence was fully sufficient to support the verdict and the motion for a new trial, which raised some of the questions discussed herein, was properly overruled.

■ In accordance with our duty in cases of this character, we have examined the record for any reversible error, whether pressed upon our attention or not. We

have dealt with all questions calling for treatment. We find no reversible error in the record and the cause is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY and GOODWYN, JJ., concur.