Appellant was indicted and convicted for the murder of Leonard Lee Fulgham by shooting him with a pistol in violation of Ala. Code § 13A-6-2 (1975). At arraignment, in the presence of counsel, he pleaded not guilty and not guilty by reason of insanity. Upon conviction, the trial court set appellant's sentence at life imprisonment in the state penitentiary. Appellant is represented by the same court-appointed counsel on appeal as he was at trial. His cause comes before this court informa pauperis.
The sufficiency of the state's evidence has not been challenged. Briefly stated, on the evening of September 26, 1980, Mrs. Betty Fulgham, the wife of the deceased, "ran out of gas" as she was returning home from the Kentucky Fried Chicken in Montevallo with her two children and her niece. Mrs. Fulgham parked her automobile on the highway in front of appellant's parents' mobile home. The mobile home was located in the Brierfield community of Bibb County. Mrs. Fulgham asked appellant's mother to call the deceased "to bring me some gas."
The deceased, Ralph Moore and Shep Garner arrived twenty to twenty-five minutes later with the gasoline. Using a piece of cardboard as a funnel the deceased managed to pour the gasoline into his wife's car and instructed her "to go on home, that he would be on later."
Before she left to go home Mrs. Fulgham saw her husband talking with appellant's brother, Willie "Peanut" Hale. According to Mrs. Fulgham's observation, "They was playing, you know, just started talking and woofin' each other." She testified that the two were not fussing and that if an argument occurred it did so after she left.
Ralph Moore testified that, while the deceased and "Peanut" were talking back and forth "mostly kidding each other," appellant "walked up and said wasn't nobody going to mess with Willie." The deceased and appellant then began arguing. As Moore told the deceased, "to come on to the car," the appellant "told him to stop." Appellant then summarily shot the deceased twice as he was trying to get inside the car to leave.
Moore drove the deceased to the Montevallo Rescue Squad and from there he was taken to the Shelby Memorial Hospital. The deceased had stopped breathing before arriving at the hospital at 8:55 p.m. and died shortly after efforts to resuscitate him proved unsuccessful.
Shep Garner's testimony was substantially the same as Moore's regarding the sequence of events which transpired between appellant and the deceased.
After the state rested its case, appellant testified in his own behalf that he shot the deceased because, "I thought he was going to do something to me." When asked why he had shot the deceased twice, appellant responded, "I don't know, just mad, I reckon."
The only issue raised on this appeal is whether or not underMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), law enforcement officers are required to inform an accused of the precise charges against him prior to taking his confession. We answer negatively. *Page 823 
The facts pertinent to this issue reveal that appellant was arrested by Deputy Calvin C. Moreland of the Bibb County Sheriff's Department at 11:10 p.m. the night of the shooting. Deputy Moreland informed appellant he was placing him under arrest for assault and advised him of his constitutional rights by reading them to him from a standard Miranda warnings card. Appellant stated that he understood his rights, but Deputy Moreland did not question him at that time. Deputy Moreland transferred appellant to the Bibb County Jail.
Deputy Moreland testified that, on September 29, two days after the killing, he was present when Investigator Don Mansell of the Alabama Bureau of Investigation took appellant's statement. Prior to taking the statement Investigator Mansell again advised appellant of his constitutional rights underMiranda. Appellant again indicated that he understood his rights and voluntarily signed a standard waiver of rights form. The voluntariness predicate for appellant's statement was fully established and appellant voiced no objection to the introduction of his signed waiver.
Investigator Mansell stated on voir dire that he did not inform appellant he was being charged with murder prior to taking his statement. Investigator Mansell explained that he didn't know whether formal charges for murder had been filed at that time. Appellant then objected to the admission of his statement, insisting that he should have been advised that he was charged with murder prior to making his confession. This objection was overruled and appellant's confession was subsequently admitted into evidence with no further objections.
It should be noted that appellant's September 29 statement describing the events which led to his killing the deceased did not differ in any material respect to his testimonial account of what happened.
As this court stated in Myers v. State, 401 So.2d 288, 291
(Ala.Cr.App. 1981): "A defendant need not be apprised of the charge against him before he can knowingly and intelligently waive his rights and make a voluntary statement." Also seeCrawford v. State, 377 So.2d 145 (Ala.Cr.App.), aff'd,377 So.2d 159 (Ala. 1979), reversed on other grounds, 405 So.2d 702
(Ala. 1981) and Jemison v. State, 49 Ala. App. 289,270 So.2d 836 (1972).
The question as to whether a confession or inculpatory statement was voluntarily made is one of law to be determined by the trial judge. Myers, supra. The trial court need only be convinced from a preponderance of the evidence to find a confession or inculpatory statement to have been voluntarily made. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619,30 L.Ed.2d 618 (1972).
In the instant case, as in Myers, supra, the record fully establishes the complete voluntariness of appellant's statement. His Miranda warnings were thoroughly covered. Thus, appellant's statement was properly admitted into evidence.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.