The appellant, Mary Lee Chambers, was indicted on June 1, 1983, by the Mobile County Grand Jury for the crime of murder. Appellant later pled not guilty to the indictment and was tried on December 13 and 14, 1983. The jury found her guilty of the lesser offense of manslaughter, and the Court sentenced her to ten years' imprisonment in the penitentiary.
A review of the facts reveals that on April 7, 1983, the Mobile Fire Department received a call regarding a life threatening situation. The paramedics arrived at the emergency address and were greeted by a black female in the yard who stated that she thought her child had stopped breathing. Upon entering the residence, the paramedics found a three year old black female lying across a bed. They testified at the appellant's trial that the child was cool to the touch, cyanotic and without any vital signs present.
The autopsy performed by Dr. Gary Cumberland, a certified pathologist, revealed externally numerous bruises and scars on the body of the deceased. He further testified that a compression abrasion inside the lip, which would be consistent with a gag or a cloth-like material tied very tightly into the mouth, was found. The pathologist also observed a bruise or contusion on the front part of the neck consistent with injury caused by a type of cloth having been tied around the neck, and U-shaped contusions on the back side of the legs which coincided exactly with the dimensions of the distal portion of a piece of electrical cord found in the house. Dr. Cumberland testified that, on the basis of his examination, the cause of death of the child was "asphyxia secondary to obstruction of the airway."
The first issue for our consideration is whether the trial court erred in denying the appellant's motion to suppress statements made by the appellant supposedly induced by promises of leniency on the part of the law enforcement officers.
In support of her assertion, appellant relies on the premise that a confession is not admissible if it is induced by promises encouraging the accused to believe that his or her case will be lightened or meliorated and dealt with more favorably. Kendrick v. State, 55 Ala. App. 11, 312 So.2d 583
(1975).
We have meticulously searched the record for any statements the law enforcement officers made to the appellant that would suggest some type of leniency if she would confess and have found none. Several statements made by the officers during the interrogation urged the appellant to tell the truth, but such statements are permissible. Eakes v. State, 387 So.2d 855
(Ala.Crim.App. 1978). Statements made by law enforcement officers during the questioning of an accused that it would be better for him to tell the truth and statements that the accused has lied do not render any subsequent confessions or statements that the accused makes inadmissible. Furthermore, confessions or statements are not inadmissible because they have been obtained by propounding to the accused questions assuming his guilt. Golden v. State, 439 So.2d 813 (Ala.Crim.App. 1983); Raines v. State, 428 So.2d 206 (Ala.Crim.App. 1983); and Bennett v. State, 409 So.2d 936 (Ala.Crim.App. 1981), cert. denied, 409 So.2d 936 (Ala. 1982).
The use of an accused's statements for trial purposes has been extensively litigated. Miranda v. Arizona, 384 U.S. 436, *Page 1010 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), advanced the proposition that exculpatory or inculpatory statements stemming from custodial interrogation may be used at the accused's trial if procedural safeguards were implemented to insure the accused's rights against self-incrimination. Miranda, supra, sets forth specific measures that should be followed prior to questioning an accused person. The person "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."Miranda, supra. See also Romine v. State, 384 So.2d 1185
(Ala.Crim.App. 1980). These rights may be waived if the waiver is made voluntarily, knowingly, and intelligently. Miranda, supra.
In the case at bar, the appellant affirmatively waived her "rights" and answered the law enforcement officers' questions. The trial judge conducted a hearing outside the presence of the jury on appellant's motion to suppress statements she made at her custodial interrogation. The court found that the statements were voluntarily made and were not induced by threats or promises operating to lead the appellant to believe she would be harmed if she did not make a statement or gain any favor by making a statement.
Hale v. State, 420 So.2d 821 (Ala.Crim.App. 1982), held that the question of whether a statement is made voluntarily is one of law and should be determined by the trial judge. See alsoMyers v. State, 401 So.2d 288 (Ala.Crim.App. 1981). In considering whether a confession or inculpatory statement is voluntarily made, the trial judge need only be convinced from a preponderance of the evidence as to the rules of voluntariness.Hale, supra, and Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619,30 L.Ed.2d 618 (1972). Furthermore, this court has consistently held that it will not overturn a trial court's finding as to the issue of voluntariness of a statement unless his decision is wrong and against the great weight of authority. Raines v.State, 428 So.2d 206 (Ala.Crim.App. 1983); Snider v. State,422 So.2d 807 (Ala.Crim.App. 1982); Morgan v. State,363 So.2d 1013 (Ala.Crim.App. 1978); Hurst v. State, 356 So.2d 1224
(Ala.Crim.App. 1978); Carter v. State, 53 Ala. App. 43,297 So.2d 175 (1974); McNair v. State, 50 Ala. App. 465,280 So.2d 171 (1973). "Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty". Bennettv. State, supra; Snider, supra, and McNair, supra.
On the other hand, the credibility and weight to be given any statement that an accused makes is a determination for the jury. Snider, supra; Lewis v. State, 295 Ala. 350,329 So.2d 599 (1976). "Once a confession has been admitted into evidence, the jury may consider the circumstances in which the confession was obtained and the way by which it was elicited in determining the credibility of the evidence and the weight to which it is given in reaching their decision." Snider, supra;Lewis, supra.
Proper procedures were followed by the trial judge in the present case in determining the voluntariness of the appellant's statement and also the statement's admission into evidence. The statement was then properly weighed by the jury in reaching their verdict.
Lastly, the appellant argues that the court erred to reversal in charging the jury as to "universal malice murder" when the indictment only charged the appellant with murder pursuant to Section 13A-6-2 (a)(1) Code of Alabama, 1975.
The trial court did in fact commit error by reading the "universal malice murder" charge, but the error became harmless when the jury returned a guilty verdict of manslaughter, a lesser offense. See Hutcherson v. State, 441 So.2d 1048
(Ala.Crim.App. 1983); Weaver v. State, 35 Ala. App. 158,44 So.2d 773 (1950); Garrett v. *Page 1011 State, 33 Ala. App. 168, 31 So.2d 151 (1947); and Thompson v.State, 131 Ala. 18, 31 So. 725 (1902).
We completely agree with appellant's contention that Ex parteWashington, 448 So.2d 404 (Ala. 1984), established the principle that an accused may not be indicted for murder pursuant to Section 13A-6-2 (a)(1) and the jury later charged with "universal malice murder" as an option for their consideration. However, as the State asserts in its appellate brief, Washington, supra, and Thomas v. State, 452 So.2d 899
(Ala.Crim.App. 1984), a recent decision of this court, the facts in these cases are distinguishable from the facts in the case at bar. Here, the appellant was indicted for murder and yet received a lesser conviction of manslaughter, even though one of the charges to the jury was "universal malice murder" and therefore improper. The jury chose not to rely on the improper charge, but decided to follow a different course and convict the appellant of a crime of lesser-degree. If the jury had convicted the appellant of "universal malice murder", as in the case of Washington, supra, then prejudicial error would have occurred and a reversal and remandment would be appropriate measures.
Therefore, this court having searched the record and found no errors injurious to the appellant's substantial rights, the decision of the trial court is hereby affirmed.
AFFIRMED.
All the Judges concur.